And with that, the first case on argument is In re Deco Enterprises, Inc. Brian M. Grossman appearing for Appellant. M. Jonathan Hayes appearing for Appley. All right. Thank you. Good morning, Mr. Grossman. Would you like to reserve any time for reply? Yes. Good morning, Your Honor. I'd like to reserve nine minutes for my reply. All right, and hopefully you can see the clock. We'll try to give you some heads up if you can't, but it's ideally your responsibility to decide where you want to cut off. With that, you may proceed. Thank you, Your Honor, and may it please the court. In light of Judge Spraker's comments, I really tried to condense my opening comments and reserve as much as I can for the reply. As the panel understands, the bankruptcy judge based her ruling upon three findings, each of which we think is erroneous. One, that my client failed to prove his claim for equitable indemnity. Two, that he failed to pursue his claim against Saman Sinai. And three, that equitable indemnity is simply not available under California law, and I think all three issues are really not even a close call. As we know, Judge Blubond made repeated findings of fact as to Saman's equal or even greater culpability with my client, Benjamin Pouladian. And I think it's... Can I interrupt? Because I agree you're laying it out exactly as Judge Blubond laid out in the order and actually the proposed order proposed, but I found it a little strange that the stipulation email waiver issue was the second issue raised by the court, and I don't want it to be the second issue raised here ideally because if it's waived, what do we... How do we even get to the other two? Oh, you mean as to whether the claims against Saman Sinai were tried? No, no. As to whether the email, the February 12th email, effectively waived or abandoned those claims. And importantly, they didn't just abandon them against Saman, they abandoned them against all three of the brothers, didn't they? That's the argument anyway. Yes, Your Honor, and I think it is at best unclear what that email accomplished because the email is discussing an agreement among counsel as to what claims counsel were going to try in that matter and Saman was unrepresented at the time. And so what our position is, is that A, it's not clear that the claims against Saman were being released, and most importantly, the best evidence that those claims were not released is the mere fact that Judge Blubond repeatedly adjudicated those claims. No, that's one version of it, I think. The other version is that she was pretty clear in saying that Saman was not a party, right? And then she made the other claims because she was running down the pretrial order and everything that you asked. And then it got rolled in, didn't it? To the proposed order submitted by opposing counsel. Well, then, Your Honor, I would submit that Judge Blubond made repeated mistakes and I don't believe that's the case because if you're putting yourself in the position of a judge who has made a ruling that these claims are no longer being adjudicated against Saman and you're going through your list and you're making repeated findings against, with respect to Saman, that doesn't jive with me as to how any learned judge would act. I mean, you have to think to yourself, okay, I've dismissed Saman, or I'm not adjudicating against Saman, but I'm repeatedly making findings about him. I think it's completely inconsistent with common sense that she would do that to say that, oh, Saman is out, but I'm going to repeatedly adjudicate claims against him. To me, it's not a fair reading of the record. And it's on that basis that we believe that, in addition to which that it's completely unclear as to whether these claims were dropped against Saman. He was never dismissed from the case. But whose obligation was it to dismiss? I mean, generally, the plaintiff dismisses the case if it's under 41, isn't it? Yes, and the court can do it sua sponte itself, saying, okay, well, if these parties are not being pursued, then the claim against Saman should be dismissed. The thrust of the argument that we're making, Judge Spraker, is that it's really twofold. One, that the email is far from clear. And two, that the repeated findings of fact by Judge Blubond and her adjudication that Mr. Palladian did not prove his claim for equitable indemnity demonstrates to us that those claims were being adjudicated. Because if a judge were to say that these claims are no longer before me, why would she adjudicate the equitable indemnity claim? She made a specific finding that Mr. Palladian didn't prove it. So it's our contention that the record is far from clear that these claims were dropped or dismissed. And if we work off of that, you know, assumption, then we have to go to the findings that Judge Blubond made that must be reviewed under de novo standards. Very important, because we're not, you know, questioning the facts. We're basing it solely upon the facts that she found, and on that basis, we're not dealing with a clearly erroneous standard. We're simply saying, based upon these- Does that apply to the waiver issue as well? What's the standard review under the effect of that email? It was read into the record by Judge Blubond, of course. Well, it's an excellent question, Judge Brekker. And having tried this issue or trying this issue right now, I want to remind everyone that a waiver must be proven by clear and convincing evidence. There's Casey instructions on that. And I think it's very important to remember that a waiver must be proven by clear and convincing evidence. And this is far from clear and convincing. I don't know if I've exceeded my time. I wanted to make sure that I- You're at 8.50, so- Okay, I think I reserved nine. Yes, you did. Thank you. It's up to you if you want to- All right, well, we'll stop there and let you reserve the full amount of that. Thank you, Your Honor. All right, then. Mr. Hayes, you may proceed. Good morning, Your Honor. John Hayes, RHM Law, appearing for Appellee Samson. I have a few comments, as I'm sure you imagine, on what- on the discussion that I was just listening to. The email, you know, the argument seems to be, well, it's unclear. And I'm not sure what that was supposed to lead to. But, you know, Judge Blubin gave Mr. Yates, the attorney at trial, so many chances to explain that. She said to him, you know, am I missing something? During the lengthy colloquy before the trial started, she asked him, well, she even said specifically, what does that first sentence mean? And there was never any even suggestion that, well, it only means this. We're not giving up the equitable indemnity claim. But the declarations by Mr. Palladio and his trial declaration said nothing about equitable indemnity, other than there was a couple sort of snide remarks. But in his closing, he said nothing about that they've established that. It wasn't brought up, really, until that objection when Judge Blubin made her proposed findings. Those were objected to. That's the first time it came up as far as, oh, by the way, we didn't give up that claim. And I want to say that the opening brief and that objection is very firm on saying that Mr. Sinai is and was still a party to the case. He was not severed out. It was not dismissed. The judgment is effective against him, the judgment that there's no right to equitable indemnity. And therefore, the suggestion that, well, why don't we send it back and let Judge Blubin do the rest of it? You know, they could ask for that. They could have filed a motion for a new trial or a motion, a 60B motion, saying it was unclear. There was effectively a denial of due process, and it should be done over. That wasn't done until after the findings. I mean, there was no request for a new trial, no request to try it over. They're really, I think, they're asking the BAP to order a 60B motion or a Rule 59 motion. Was Simon represented at all in that proceeding? No, as far as I know. It went on for five years or four and a half years. But he, no, certainly, I don't think ever he was represented. Did he participate in the litigation, you know, actively? You know, I think his deposition was taken, but I mean, I wasn't there either. But he did not show up to trial. He was left off the witness list after the waiver, after that email came out. He was removed from the witness list, and he didn't show up. He wasn't there at trial. But there's no evidence that he received the email, the February 12th email either, is there? No, not in the record. I'm trying to speed think that now, right? So how do you respond to Mr. Grossman's argument, Mr. Palladian's argument that, you know, the first line is that all counsel got together and agreed to the following. Paraphrasing. I'm not sure if Mr. Palladian says, you know, I've decided I have five things that I was going to argue. I've decided not to do two of them. I don't know why it would matter as long as he told that to the judge. I don't know why it would matter who heard him say that, you know. Would it matter to the other party that wasn't going to be tried? Oh, absolutely. But that's what I don't see in the record. Is anything recognizing that Saman specifically knew, appreciated, acted on? I mean, it's just, it looks like it's just blank. Well, I do know, I mean, from what I've been told, but I do know that once that waiver came out and it was in Judge Blubon's tentative, and she commented that he made the decision not to participate anymore after that, believing that he had been specifically and intentionally left out. I don't even know what if they had said, well, you know, Sam, we're going to leave you out of this. I mean, what would he have said? You know, I don't see how the waiver could, how it could matter, you know, whether he participated in their unilateral decision, apparently, to leave him out of it, you know. And by the way, he said, Mr. Grossman said that it has to be clear and convincing. That's nowhere in the record. I don't know that that may be true in criminal proceedings, but that's never been argued that the waiver, it's not a waiver unless there's clear and convincing evidence, which, which, by the way, I think there is clear and convincing. There's, there's, I mean, there's a few snide remarks, as I said, otherwise, there's nothing in the whole trial about whether Sam. Is things specific things that would make him liable for payment of that's a clear finding that he forged his brother's name. Isn't there? Oh, I'm sorry. You know, that's not what Mr. What Mr. Grossman was saying. I thought it was the, the waiver isn't effective unless there's clear and convincing evidence showing that it was effective or that it was acted on and it is clear and convinced there was nothing in the trial. Where Mr. Polanian is trying to there's no summary, especially at the closing. That says, here's what we prove with respect to, and even most importantly, is this the jury instruction. That says, and there was nothing in the reply brief that says that jury instruction isn't right or isn't enforceable or something but the jury instruction tells the jury you're going to be asked to, to quantify or come up with with the comparative numbers. How much Mr. Polanian is charged with a whole lot of bad deeds, you're going to be asked to figure out what was Mr. Simone's relationship or or his, his liability for each one of these. And maybe some he was in on a completely supposedly, maybe some he was just barely, it was just barely involved. And their position is, we proved without a doubt 100% that every dime Mr. Polanian was charged with was also caused completely. At least together was caused by Sam and therefore he's liable. I actually don't know whether whether they think he's liable for the whole $10 million or half of it. That that isn't even in the record, you know that that they established that but I, I feel like I sort of went off course there for a minute. But I did want to comment on the de novo. And I sort of wondered about that myself. I mean, is there enough evidence. How I mean what I don't see how you could possibly find that there was enough evidence to make the findings but was there enough evidence I could see where that might be reviewed de novo. But there's, there's nothing in Mr. Yates's objection to the findings that explains what that means. Is there a code section or rule. Are there cases that say this is what enough evidence means with respect to equitable indemnity. There's nothing in the opening brief. And there's, it's argued in the reply brief, but really just in one sentence that says, well, that's a, that's a legal conclusion. And the point of that is, is that judge blue bond didn't get a chance to decide whether or not she had enough evidence in front of her to reach the conclusion that she that she made that there's, it's not about what's the law on enough evidence to make the findings that were required. So, to me, it's, it's not de novo, it's a clear air was there enough evidence that's reviewed under clear error. Do you believe that we need to address sticking on the, on the waiver issue? If we find a waiver, do we address what effect that waiver has again, getting back to this issue of. What did the waiver do? Did it remove the claim totally from the litigation? And as to Mr Grossman's point, akin to an informal dismissal of the proof of claim, or even if it was removed, was it still adjudicated and tried for purposes of finality and preclusion. Well, my, my first thought about that is, is the word removed. I would say abandoned. It's the same as I said a few minutes ago, if, if there were five causes of action or claims or charges or whatever. And at the beginning they say, you know, we're only going to go through three of those. And the court, the court doesn't he certainly doesn't have a Silas Bonte duty to sever the other two, or to dismiss a party. If the complaint said we're going after five people and we've decided a trial to only go after three there's there's there's still parties. There's still parties and there's absolutely been adjudication on what was before the court. I mean, it's in the joint pretrial order that the court has to make a finding about equitable indemnity and there was just no evidence and it wasn't removed. It just, it wasn't a plaintiff or the Mr. Plenty and didn't proceed with it, and therefore didn't prove anything. Well, maybe not. Therefore, but the reality is didn't offer enough evidence to prove anything anyway, but. Totally, in effect. The other alternative by virtue of the February 12 email, which the court incorporated into its first day, you know, description of what was going on, saying the only claim Mr Platy is going forward on was the credit card related debts. And then there was some discussion about a loan, right? But excluded from that was any, any discussion of the indemnity against any of the brothers because there were indemnity claims against all three. So could that could those claims have been tried at that point, given the statement from the parties and then incorporated by the court that the only claim going forward was the credit card debt and possibly the loan issue raised by Mr. Well, my response is, could it? Yeah, I would say yes. I mean, I've been involved in cases where the, you know, everybody's trying to is fighting about, but, you know, fraud. And at the end, the judge says, well, there's no fraud, but I find willful and malicious injury. You know, when the evidence comes out, whatever the evidence is, the court can make a finding and does even if someone's not there. Well, if the evidence came out, if someone's not there, so I think it's the biggest proof that there that there was a way that everybody involved believe that they never said where's some on why isn't he here. I mean, everybody believed that they were not there was no intention any longer to go forward with the equitable indemnity claim. I'm about out of time. Anything else. No, no, that's it. Thank you, Your Honor. All right, Mr. Grossman, we'll turn it back to you for reply and you have eight and a half minutes left. Thank you, Your Honor. Well, this is a have your cake and eat it to situation. I think the judges can appreciate that. If the claim wasn't tried, then Judge Blue Bond had no business making an adjudication on those claims. And if that's the way the bankruptcy appellate panel sees it, then the judgment still must be reversed to remove those claims so that my client can pursue an indemnity claim thereafter. As we all know, an equitable indemnity claim need not be brought in connection with the action seeking to place liability on my client. He can wait until there's actual damages through a adverse judgment and then proceed for equitable indemnity, which is perfectly appropriate. That's not our version of the facts, but I don't want to swim upstream. I will point out that the February 12th email, as Judge Breaker points out, begins with, quote, please consider this email as a joint email by all counsel, dot, dot, dot. And that there was no indication that it pertained to claims against Samant specifically and that indeed the other brothers or the other brothers are being pursued. And there's a reservation. The problem is that there's an express reservation of what is being retained to go forward. It's the debt on the credit cards. Yes, yes. And again, not wanting to swim upstream. I do believe that if there is to be a waiver found and this is not something that I breathe because it's not something that I appreciated until Judge Breaker brought it up, that that that this can be construed as a waiver. And that I'm sure the court's more than capable of making the determination that a waiver does have to be proven by clear and convincing evidence. But leaving that aside. At the end, I don't want to swim too far upstream when I want to spend my time focusing on the burden of clear and convincing evidence. You say a waiver has to be proved if people are litigating the issue of labor, of whether or not there's a waiver. Maybe you're right. But here, what it is, is they're not litigating it. They're saying we aren't going to pursue it. OK. And Judge Corbin, I'm fine with that, because if I read the tea leaves correctly, there's a very big concern about whether these claims were being tried. Notwithstanding, Judge Bloubon's expressed findings on them. And I'm fine with that, because if it wasn't tried, then it cannot be adjudicated. It's having your cake and eat it, too. If what we're saying is that these claims aren't proceeding, they're not being litigated, then they cannot be adjudicated. And if they cannot be adjudicated, then her adjudication of those claims is erroneous. And if that's the case, we must reverse the judgment and say that this claim wasn't tried. And Mr. Palladian may pursue his equitable indemnity claims in another venue. Because if you do it this way, you're saying, A, he dropped the claims. He didn't adjudicate them. But B, we're going to create a preclusive judgment preventing him from adjudicating them in the future. There's no principle of law that supports that. And that would be, you know. Why do we need to go there on this? I understand. I understand your point. I understand your argument. But really, the only thing before us is reviewing, as I understand it, Judge Bloubon's ruling as to Saman. You're not challenging the equitable indemnity claims against the other two brothers, correct? Correct. All right. Are those preclusive then? Is that final? Well, it's preclusive against the other brothers because we've entered into a settlement agreement with them. So that's just that. Well, the two brothers were represented by counsel, right? And it's not within that email. It goes on. Their involvement was discussed in the trial. So it seems that your claims have, you know, understandably focused on Saman. But that was not the only claim for equitable indemnity. That's true, Your Honor. And I believe that a proper reading of the email is that the claims against the brothers were dropped. Because they were represented by counsel. And that was an email among all counsel. That's our reading of this email, that it was an email among counsel, between counsel, and that Mr. Yates did not intend to release claims against a person who was not a party to that email and that conversation. Judge Spraker, you're cutting out. Sorry, I'll move. I kept moving back. Can you hear me okay? Now I can. All right. Sorry. You're telling me that Judge Blubin understood that your email and whatever it was doing was limited to those parties represented by counsel. I don't believe that at all, Your Honor, because she made repeated adjudications as to Saman. And that's my point, as Mr. Hayes pointed out. Why wasn't there any commentary or pushback or correction made by counsel at trial when the judge made those statements, including Saman is no longer a party? I do not know. I do not know. And I believe that— Isn't it possible on appeal that a court could accept that as significant evidence that Judge Blubin was correct in her interpretation? Quite possibly. And that's why we have alternative requests in our appeal, which is to either remand it back to Judge Blubin to make a final determination as to equitable indemnity, or to strike out what are improper, preclusive findings against my client that don't— I didn't catch you, Judge Brekker. I mean, to your point that—my point, that this really was decided with the February 12th email and letting those claims go, they were, in my words, removed, Mr. Hayes, abandoned. Were those actually necessarily required to be litigated then? No, Your Honor. As I pointed out a few moments ago, that equitable indemnity claim, one could even argue that it doesn't even begin to accrue until there are damages. And the damages to Mr. Palladium was the judgment against him. We see people— Let me repeat it. Yeah, you need to repeat it, Judge Brekker. We can't—you keep cutting on out. I don't know why the microphone is— In your view, Mr. Grossman, that makes it possibly improper, but not preclusive. It makes it preclusive if the judgment were to stand. I'm concerned. I mean, I could file a case in state court and then argue with the state court judge whether these findings were preclusive because they weren't actually litigated. That's a whole other problem that can be avoided if this panel says that those findings don't belong there in the first place because they were never litigated. So I'm trying to save problems in the future by arguing with some other judge whether or not this judgment should be preclusive because it was or was not actually litigated. And that's a problem that can be solved by this court by simply saying that those findings don't belong. And with that, I will happily submit and thank the panel for its time. Any other questions from either Judge Corbett or Judge Nieman? Thank you very much. The matter will be submitted, and we'll try to get out a decision as soon as possible. Thank you both for your interest. Thank you.
judges: Spraker, Corbit, and Niemann